IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOHAMMADREZA ASSADZADEH,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT S. MUELLER,<br>DIRECTOR, FEDERAL BUREAU OF<br>INVESTIGATIONS, ET AL.,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 07-2676 |

**MEMORANDUM AND ORDER**

**Tucker, J.**                                                                                                          **October ___, 2007**

  Presently before this Court is Defendants' Motion to Dismiss (Doc. 4).  For the reasons set forth below, upon consideration of Defendants' Motion and Plaintiff's Response thereto (Doc. 6), this Court will grant in part and deny in part Defendants' Motion.

**BACKGROUND**

  Plaintiff, Mohammadreza Assadzadeh, filed suit against Defendants—the Federal Bureau of Investigation ("FBI"), Department of Homeland Security, United States Citizenship and Immigration Service ("USCIS"), and unknown federal agency or agencies—in connection with his application for naturalization, which has been pending for over two years.

  Under the Immigration and Naturalization Act (INA), an individual, who has been lawfully admitted to the United States for permanent residence, is eligible for naturalization upon establishing five years of continuous residence in the United States and a showing of good moral character.  8 U.S.C. § 1427(a).  The naturalization process takes place as follows: (1) filing of N-

400 application and payment of fees, (2) photographs and fingerprinting, (3) investigation (including but not limited to review of the applicant's immigration documents and police data if any) and background check, (4) examination, (5) determination, and (6) oath ceremony if naturalization is granted.  8 U.S.C. §§ 1445-1448; 8 C.F.R. §§ 316.4, 334.2, 335.1, 335.2, 337.1-.10.  USCIS must make a determination on a naturalization application within 120 days after an examination. 8 U.S.C. § 1447.  An examination may not be conducted until an applicant's background check has been completed.  8 C.F.R. § 335.2(b).  The FBI conducts background checks of naturalization applicants on behalf of USCIS.  Id.  Plaintiff's application has been in the background check stage for approximately two years.

Plaintiff, an Iranian national, has been a lawful permanent resident since September 15, 2000.  He filed his application for naturalization on June 28, 2005.  Shortly thereafter, USCIS scheduled Plaintiff to appear for fingerprinting on August 12, 2005 and for an interview on November 8, 2005.  However, on October 25 and 26, 2005, USCIS sent letters to Plaintiff stating that his interview was descheduled because his case was "pending final background checks," which could delay Plaintiff's case for "an undetermined amount of time."  Six months later, in April 2006, Plaintiff contacted USCIS regarding the status of his application.  USCIS responded: "A check of our records establishes that your case is not yet ready for decision, as the required investigation into your background remains open."  To date, Plaintiff has neither received notification of completion of his background check nor has his interview been rescheduled.

Plaintiff filed suit against Defendants on June 26, 2007, two years after filing his naturalization application.  Plaintiff seeks a declaratory judgment for naturalization or a writ of mandamus compelling Defendants to process his naturalization application.  Plaintiff alleges that

2

Defendants have violated the Administrative Procedures Act (APA) as well as his constitutional rights to due process and equal protection of the laws. Plaintiff premises subject matter jurisdiction on the Immigration and Naturalization Act (INA), 8 U.S.C. § 1101-1748; the Administrative Procedures Act (APA), 5 U.S.C. §§ 551-59, 701-06, in conjunction with the federal question statute, 28 U.S.C. § 1331; and the Fifth Amendment of the U.S. Constitution.

Defendants move to dismiss Counts I-IV of Plaintiff's Complaint (declaratory judgment for naturalization, APA violation - unreasonable delay, APA violation - regulatory claims, and mandamus claim) for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1). In addition, Defendants move to dismiss Counts II, V, and VI (APA violation - unreasonable delay, Due Process claim, and Equal Protection claim) for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). The Court will discuss each basis for dismissal in turn.

**DISCUSSION**

A.  **Lack of Subject Matter Jurisdiction**

Motions for dismissal for lack of subject matter jurisdiction, pursuant to FED. R. CIV. P. 12(b)(1), may be raised at any time. See 2 Moore's Federal Practice § 12.30 (Matthew Bender 3d ed. 2005). Rule 12(b)(1) challenges are either facial or factual attacks. See id. at § 12.30 [4]. "A facial attack questions the sufficiency of the pleading," and "[i]n reviewing a facial attack, a trial court accepts the allegations in the complaint as true." Id. However, "when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." Id.; see also Mortensen v. First Fed.

Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  In a Rule 12(b)(l) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891; see also Carpet Group Int'l v. Oriental Rug Imps. Ass'n, 227 F.3d 62, 69 (3d Cir. 2000).  "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891.  "The [trial] [c]ourt must be careful, however, not to allow its consideration of jurisdiction to spill over into a determination of the merits of the case, and thus must tread lightly in its consideration of the facts concerning jurisdiction."  Dugan v. Coastal Indus., Inc., 96 F. Supp. 2d 481, 483 (E.D. Pa. 2000).

"[T]he plaintiff will have the burden of proof that jurisdiction does in fact exist." Mortensen, 549 F.2d at 891.  The plaintiff must not only demonstrate that a controversy existed at the time it filed suit, but that it continues to exist throughout the litigation.  Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 635 (Fed. Cir. 1991), abrogated on other grounds by, Liquid Dynamics Corp. v. Vaughan Co., 355 F.3d 1361, 1370 (Fed. Cir. 2004).  A motion to dismiss for lack of subject matter jurisdiction predicated on the legal insufficiency of a claim "is proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'"  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991), cert. denied, 501 U.S. 1222 (1991) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

      1.    **Sua Sponte Jurisdictional Inquiry**

Before considering the merits of Defendants' Motion, this Court must first decide whether the INA's jurisdiction-stripping provision, 8 U.S.C. § 1252(a)(2)(B)(ii), bars judicial

4

review of Plaintiff's claims.  In pertinent part, § 1252(a)(2)(B)(ii) provides:

> [N]o court shall have jurisdiction to review any — decision or action of the Attorney General or Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or Secretary of Homeland Security, other than the granting of relief under section 208(a) [of the INA, 8 U.S.C. § 1158(a)].

8 U.S.C. § 1252(a)(2)(B)(ii).  This provision applies to <u>all</u> immigration judgments, decisions, or actions committed to the <u>sole discretion</u> of the Attorney General or Secretary of Homeland Security.  <u>Jilin Pharm. USA, Inc. v. Chertoff</u>, 447 F.3d 196, 199-200 & n.5 (3d Cir. 2006) (citation omitted); <u>Soltane v. U.S. Dep't of Justice</u>, 381 F.3d 143, 146 (3d Cir. 2004).  Accordingly, § 1252(a)(2)(B)(ii) permits courts to review only "non-discretionary action" and "purely legal determinations made by the agency." <u>Pinho v. Gonzales</u>, 423 F.3d 193, 204 (3d Cir. 2005) (citation omitted).

Here, Plaintiff complains of an unreasonable delay in the processing of his naturalization application.  Processing of these applications is a mandatory duty.  <u>Kaplan v. Cheroff</u>, 481 F. Supp. 2d 370, 399 (E.D. Pa. 2007) (stating that USCIS must process each naturalization application so that a determination may be made (citing 8 C.F.R. 316.14(b)(1)); <u>cf.</u> <u>Pinho</u>, 432 F.3d at 204 (finding that a "[d]etermination of <u>eligibility</u> for adjustment of status - unlike the <u>granting</u> of adjustment itself - is a purely legal question" that "does not implicate agency discretion").  As such, Plaintiff's claims do not evade judicial review under § 1252(a)(2)(B)(ii). <u>Elhaouat v. Mueller</u>, No. 07-632, 2007 U.S. Dist. LEXIS 58906, at *5 (E.D. Pa Aug. 9, 2007).

### 2. Declaratory Judgment for Naturalization

In Count I, Plaintiff alleges that because Defendants failed to adhere to their obligation to

decide his naturalization application in a timely and efficient manner, this Court should approve his application. Plaintiff hinges jurisdiction on the INA, specifically 8 U.S.C. § 1447(b). Section 1447(b) provides for judicial review in federal district court in two circumstances: (1) if USCIS denies an application for naturalization or (2) if USCIS fails to make a "determination" within 120 days of the applicant's "examination." 8 U.S.C. § 1447(b); accord 8 C.F.R. 310.5.

Defendants move to dismiss, maintaining that this Court lacks subject matter jurisdiction because Plaintiff has not yet had an "examination" as required by § 1447(b). Plaintiff, in turn, claims that Defendants' failure to adjudicate his application in a timely manner has resulted in a constructive denial of his application, which would trigger jurisdiction under § 1447(b).

District courts across the country are split as to the definition of the term "examination" in § 1447(b) but the majority of courts to rule on the issue have held that "examination" refers to the interview. See Walji v. Gonzales, No. 06-20937, 2007 U.S. App. LEXIS 22102, at *7-11 & nn.4-5 (5th Cir. Sept. 14, 2007) (listing cases on both sides, with a clear majority defining examination as the interview). After reviewing cases which state that "examination" means interview" and cases which state "examination" refers to the entire naturalization process leading up to the determination, this Court finds the majority view to be sound as USCIS's regulations make clear that the term "examination" means interview. See 8 C.F.R. § 335.2(a) (stating that "examination" involves in person questioning of the applicant by a USCIS official); 8 C.F.R. § 320.4 (indicating that for all applicants who were born abroad to a citizen parent, USCIS must conduct an "examination" of the applicant before granting a certificate of citizenship and entitled "[w]ho must appear for an interview on the application for citizenship?") (emphasis added). Having concluded that the term "examination" refers to the interview, a plain reading of §

6

1447(b) leads this Court to conclude that an interview (followed by a denial or 120 days of inaction) is required to trigger the jurisdiction of the district courts.

Here, Plaintiff has not undergone an interview and thus subject matter jurisdiction under § 1447(b) has not been triggered. Elhaouat, 2007 U.S. Dist. LEXIS 58906, at *22 n.11; Ahmed v. Mueller, No. 07-0411, 2007 U.S. Dist LEXIS 68847, at *5-6 (E.D. Pa Sept. 14, 2007). A naturalization applicant must undergo a background check before an interview may be held. 8 C.F.R. § 335.2(b). District courts do not have the resources or expertise to conduct background checks. El-Daour v. Chertoff, 417 F. Supp. 2d 679, 684 (W.D. Pa. 2005). Further, the interview and background check requirements are integral parts of the naturalization application process. Id.; Manzoor v. Chertoff, 472 F. Supp. 2d 801, 807 (E.D. Va. 2007). Thus, although Plaintiff argues that his application has been constructively denied, this Court is unwilling to dispense with the procedures necessary for proper adjudication of Plaintiff's naturalization application. Defendants' Motion is granted as to Plaintiff's declaratory judgment claim.

### 3. APA Violations and Mandamus Claim

Next, Plaintiff alleges that Defendants unreasonably delayed in adjudicating Plaintiff's application and asks this Court to compel Defendants to act on his pending application. Plaintiff maintains that this Court has jurisdiction under the APA in conjunction with the federal question

statute, 28 U.S.C. § 1331,[1] and the mandamus statute, 28 U.S.C. §1361.[2]  Because the APA and mandamus statute have been held to be co-extensive, this Court will address these claims together.  See Han Cao v. Upchurch, 496 F. Supp. 2d 569, 575 (E.D. Pa. 2007) ("Most of the courts that have addressed the issue agree that, for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive.")

Defendants argue that this Court lacks subject matter jurisdiction over Plaintiff's APA and mandamus claims because no statute requires adjudication of Plaintiff's application within a specified time-frame.  In support of their position, Defendants rely on Norton v. South Utah Wilderness Alliance, 542 U.S. 55 (2004).  In Norton, the U.S. Supreme Court determined that "the only agency action that can be compelled under the APA is action legally required." 542 U.S. at 63 (emphasis added).  Likewise, the mandamus remedy is confined to enforcement of "a specific unequivocal command." Id. at 63.  Thus, to invoke the jurisdiction of the district courts, a plaintiff must assert that an agency failed to perform a mandatory duty.  Id. at 63-64.

While the USCIS has some discretion whether to grant or deny an application for naturalization, it has no discretion on whether to process an application.  Shaat v. Klapakis, No. 06-5625, 2007 U.S. Dist. LEXIS 703338, at *8-9 (E.D. Pa. Sept. 21, 2007) (citing 8 C.F.R. §§ 335.1-335.3(a)).  Similarly, the FBI has a mandatory duty to conduct background checks.  8

---

[1] The APA authorizes suits by any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" and permits a court to compel agency action "unlawfully withheld or unreasonably delayed."  5 U.S.C. § 702; 5 U.S.C. § 706.  Nonetheless, the APA does not provide an independent jurisdictional basis; rather, jurisdiction over an APA claim arises under the federal question statute, 28 U.S.C. § 1331.  Califano v. Sanders, 430 U.S. 99, 106-07 (1977).

[2] The mandamus statute provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.

C.F.R. § 335.2(b); Kaplan, 481 F. Supp. 2d at 401.  Because Defendants have a non-discretionary duty to adjudicate naturalization applications and complete background checks, they must do so in a reasonable amount of time.  Kaplan, 481 F. Supp. 2d at 399, 401; Elhaouat, 2007 U.S. Dist. LEXIS 58906, at *16-17.  That the INA does not provide a specified time-frame for doing so is of no import; the APA's rule of reasonable timeliness applies.  See 5 U.S.C. § 555(b) (imposing default rule of reasonable time for performance of agency action); Kaplan, 481 F. Supp. 2d at 399 (stating that the government does not have "unfettered discretion to relegate aliens to a state of limbo leaving them to languish there indefinitely"); Elhaouat, 2007 U.S. Dist. LEXIS 58906, at *17 (citing Pub. Citizen Health Research Group v. Chao, 314 F.3d 143, 152 (3d Cir. 2005)); Ajmal v. Mueller, No. 07-206, 20007 U.S. Dist. LEXIS 52046, at *5-6 (E.D. Pa. July 17, 2007) (agreeing with the majority of courts to consider this issue by holding that the mere absence of a specified time-frame for scheduling an interview does not mean that USCIS may indefinitely postpone processing of these applications).  Because Defendants have a mandatory duty to process naturalization applications within a reasonable time, this Court has jurisdiction over Plaintiff's APA and mandamus claims.  Thus, Defendants' Motion is denied as to these claims.

### B.     Failure to State a Claim

Defendants also move to dismiss Counts II (APA violation - unreasonable delay), Count V (Constitutional Due Process claims), and Count VI (Constitutional Equal Protection claims) for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6).

In considering a motion to dismiss under Rule 12(b)(6), the court "must take all the well

pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citations omitted), cert. denied, 489 U.S. 1065 (1989); see Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The court must decide whether "relief could be granted on any set of facts which could be proved." Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  A motion to dismiss may be granted only "if appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### 1.  APA Violation - Unreasonable Delay

Defendants move to dismiss Plaintiff's unreasonable delay claim, arguing that Plaintiff has not plead a claim that would entitle him to relief under the APA or mandamus statute. Defendants argue that Telecomm. Research & Action Ctr. v. FCC, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC") provides the seminal six-part test for determining unreasonable delay and that application of that test necessarily yields a result in Defendants' favor.[3]

TRAC, while persuasive, is not binding on this Court.  Further, there is "no particularized standard" for determining whether agency delay is unreasonable. Han Cao, 496 F. Supp. 2d at 577; see also Oil, Chem. & Atomic Workers Union v. OSHA, 145 F.3d 120, 123 (3d Cir. 1998)

---

[3] Rather than a six-part test, TRAC enumerates six principles that have guided courts in determining whether agency delay is unreasonable. See TRAC, 750 F.2d at 80 (stating that the hexagonal standard drawn from its prior cases "is hardly ironclad" but "nevertheless provides useful guidance in assessing claims of agency delay") (emphasis added); Mashapee v. Norton, 336 F.3d 1094, 1110 (D.C. Cir. 2003) (stating that TRAC provided "some factors relevant to the [unreasonable delay] inquiry" and"[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court").

(setting forth factors for the unreasonable delay inquiry but noting that the inquiry itself is necessarily "fact-sensitive"). Instead, "when an agency is required to act—either by organic statute or by the APA—within an expeditious, prompt, or reasonable time, § 706 leaves in the courts the discretion to decide whether agency delay is unreasonable." Han Cao, 496 F. Supp. 2d at 577 (quoting Forest Guardians v. Babbitt, 174 F.3d 1178, 1190 (10th Cir. 1999)).

Plaintiff alleges that his application has been pending in the background check stage for over two years and that this delay is unreasonable. As discussed above, Defendants have a mandatory duty to adjudicate Plaintiff's naturalization application within a reasonable time. While Defendants may have adequate justification for delaying Plaintiff's application, their justification goes to the merits of Plaintiff's claim - i.e., whether the delay is reasonable or unreasonable. At the motion to dismiss stage, this Court is satisfied that Plaintiff has sufficiently stated a claim of unreasonable delay and will therefore deny Defendants' Motion as to this claim.

      **2.**      **Due Process Claim**

In Count V, Plaintiff alleges that Defendants violated his Fifth Amendment procedural due process rights in failing to adjudicate his naturalization application in a timely manner. Defendants move to dismiss Count V for failure to state a claim upon which relief can be granted. The Fifth Amendment's Due Process Clause prohibits the deprivation of "life, liberty, or property, without due process of law." U.S. CONST. amend V. To state a claim for violation of procedural due process, a plaintiff must allege that the government violated a constitutionally-protected liberty or property interest. Hernandez v. Gonzales, 437 F.3d 341, 345 (3d Cir. 2006). Here, Plaintiff alleges that in paying the requisite application fees, he has secured a protected

property interest in timely adjudication of his naturalization application.  It is well-established that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  An entitlement is not created by the Constitution but an independent source—such as state or federal statutes—which secures and defines a right to a specific substantive government benefit.  Id.; Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 463 (1976).

While Plaintiff alleges the existence of a property right, Defendants maintain that no such right exists.  In support of their position, Defendants rely on Mudrich v. Attorney General, 469 F.3d 94 (3d Cir. 2006) for the proposition that aliens have "no constitutional right to have their immigration matters adjudicated in the most expeditious manner possible."  469 F.3d at 99.  In Mudrich, a Serbian national alleged that due to a four-year delay in processing of his asylum petition and an eight-year delay in processing of his mother's application for adjustment of status, he was unable to receive a grant of asylum and an adjustment of status via his mother.  Id. at 98.  During the period of delay, conditions in Serbia had changed such that he became ineligible for asylum, which in turn prohibited him from securing permanent resident status.  Id. In denying relief, the Third Circuit determined that a due process right does not attach absent a "hard-and-fast deadline" for acting upon an application for a discretionary immigration benefit. Id. at 99.  In other words, an individual must have either a substantive right to the underlying immigration benefit or the right to demand adjudication of his or her application within a specific time frame.  See id. (concluding that "Mudric simply had no due process entitlement to the

wholly discretionary benefits of which he and his mother were allegedly deprived, much less a constitutional right to have them doled out as quickly as he desired"); accord Okin v. Wakinekona, 461 U.S. 238, 250 (1983) ("Procedure is not an end itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); Shvartsman v. Apfel, 138 F.3d 1196, 1199 (7th Cir. 1998) (stating that absent the entitlement requirement, "the scope of the Due Process Clause would be virtually boundless").

In the instant case, neither the INA, USCIS's regulations, or the APA provide the requisite firm deadline for adjudicating Plaintiff's application for naturalization, a discretionary immigration benefit.  The APA does impose a "reasonable time" requirement for adjudication of naturalization applications, but this is not a "hard-and-fast deadline."[4]  Absent a specific mandate entitling Plaintiff to naturalization or processing of his application within a specific time-frame, Plaintiff does not have a constitutional right to timely adjudication of his application.  See Kaplan, 481 F. Supp. 2d at 390-91.  Accordingly, Defendants' Motion to Dismiss is granted.

### 3. Equal Protection Claim

In Count VI, Plaintiff alleges an equal protection violation, stating that "similarly-situated individuals are treated differently under the current administrative investigation scheme."  More specifically, Plaintiff claims that those applicants with a background check problem are treated differently than those applicants without a background check problem in that the latter's applications are processed in a timely manner.  Defendants move to dismiss for failure to state a claim upon which relief may be granted, arguing that Plaintiff fails to allege any impermissible

---

[4] As discussed above, the reasonableness of an alleged agency delay is a fact-sensitive inquiry.  Therefore, the APA can not provide the requisite "hard-and-fast deadline" necessary to trigger a procedural due process right.

motivation for the allegedly disparate treatment of applicants.  This Court agrees.

The Equal Protection Clause of the Fourteenth Amendment states that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend XIV.  Although the Fourteenth Amendment applies only to the states, the principles embodied in its Equal Protection Clause apply to the federal government through the Due Process Clause of the Fifth Amendment. Regan v. Taxation with Representation of Wash., 461 U.S. 540, 542 & n.2 (1983).  The purpose of the Equal Protection Clause "is to secure every person . . . against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  It is well-established that "discriminatory enforcement of a facially valid law is also unconstitutional under the Equal Protection Clause." Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005) (citing Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886)).  To state a claim of unconstitutional discriminatory implementation of a facially neutral law, a plaintiff must allege that government officials seek to enforce the law "on the basis of an unjustifiable standard, such as race, or religion, or some other arbitrary factor," or in order "to prevent the exercise of a fundamental right." United States v. Schoolcraft, 879 F.2d 64, 68 (3d Cir 1989).  Bare allegations of a disparate impact are insufficient; plaintiff must allege that the "defendant intended to discriminate in a manner that lead to the disparate effect." Kaplan, 481 F. Supp. 2d at 393 (citing Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-65 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976)).

Here, Plaintiff alleges that the Defendants are engaged in improper execution of USCIS's policies via disparate treatment of applicants with background check problems.  But Plaintiff has

failed to allege any facts which would show that Defendants possessed an impermissible discriminatory motivation in implementing USCIS policy or in processing background checks and/or adjudicating naturalization applications. Thus, Plaintiff has failed to state a claim for an equal protection violation. See <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (stating that to survive a Rule 12(b)(6) motion to dismiss, Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" - i.e., plaintiff must provide actual "grounds" for his "entitlement to relief," not just mere "labels and conclusions").

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part. Plaintiff's declaratory judgment for naturalization claim under Count I is dismissed for lack of subject matter jurisdiction. Plaintiff's claims under Count V for violation of due process and Count VI for an equal protection violation are dismissed for failure to state a claim. The following claims shall remain: (1) APA violation - unreasonable delay claim under Count II; (2) APA violation - regulatory claims under Count III; and (4) Mandamus claim under Count IV.

An appropriate Order follows.